CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 2 2 2005

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ANGELA E. NORMAN,<br>**Plaintiff,**<br><br>v.<br><br>CITY OF ROANOKE, VIRGINIA, et al.,<br><br>**Defendants.** | Civil Action No. 7:04CV00278<br><br>**MEMORANDUM OPINION**<br><br>By: Samuel G. Wilson<br>United States District Judge |

This is an employment discrimination action brought by Angela E. Norman against her employer, the City of Roanoke, Virginia. Norman claims that her employer discriminated against her because of her age and retaliated against her for protected activity, in violation of 42 U.S.C. § 2000(c) et seq. (Title VII) and 29 U.S.C. § 621 et seq. (ADEA).[1] This matter is before the court on the defendant's motion for summary judgment.[2] The court finds there is no genuine issue of material fact and the defendant is entitled to judgment as a matter of law.

**I.**

The City of Roanoke (the City) has employed Norman, a 56-year-old female, since 1976. She worked in the Department of Human Resources for more than twenty years and has worked in the Division of Risk Management since July 2003. Norman has a high school diploma and has

---

[1] Norman, an African-American, conceded at oral argument that she does not have sufficient evidence to go forward with her claims of race discrimination. The court accordingly does not address those claims in this opinion.

[2] Norman initially filed this action against the City of Roanoke and her immediate supervisors, Darlene Burcham and Kenneth Cronin. Because Title VII and the ADEA preclude individual liability, the court granted Burcham and Cronin's motion to dismiss the claims filed against them. In this Memorandum Opinion, "defendant" refers only to the City of Roanoke.

completed several courses at Virginia Western Community College.

Norman claims that the City denied her two promotions on account of her age. In October 2001, Norman applied for the position of Compensation and Benefits Analyst #0125. A hiring panel consisting of one female and two males, all over the age of forty, ranked Norman as the fourth most qualified applicant. The City ultimately hired Jackie Clewis, a 41-year-old black female. Ms. Clewis had an undergraduate degree in business management and was working on a master's degree in interdisciplinary studies. In November 2001, Norman applied for another open position, Compensation and Benefits Analyst #0132. The hiring panel did not interview her for the position, but it considered those it had interviewed for #0125. The City hired Jamie Stockner, a 24-year-old white female. Ms. Stockner had an undergraduate degree in psychology and a master's degree in industrial and organizational psychology.

Norman also claims that several decisions by the City affecting her employment were in retaliation for her raising complaints of discrimination. Norman addressed the Roanoke City Council on three occasions claiming that the City's employment policies were discriminatory. On September 27, 1997, Norman complained that discrimination was "still alive and active"; on February 5, 2001, Norman again protested discrimination in hiring and promotional practices within the City government; and on November 5, 2002, Norman told the City Council that, "the wheel of discrimination is turning and targeting the senior in age and senior in service employees."

Five months after her second speech to the City Council, in June 2001, Norman sought to have her position as a Human Resource Technician reclassified to a position she believed was commensurate with the duties she was performing. Norman had made a similar request in 1995

2

and again in 1996. In 1995, two City employees evaluated her position and determined that reclassification was not appropriate. In 1996, the City consulted an outside analyst who determined that the position was classified properly. In 2001, Norman met with the City Manager, Darlene Burcham, who did not find it appropriate to reclassify Norman's position. Burcham did not conduct an additional evaluation but based her decision on the two previous evaluations.

In the spring of 2003, due to citywide budget cuts, the City eliminated fifteen positions, including Norman's. At the same time, a position in the Division of Risk Management at the same salary, pay grade, and benefits as her previous position became available, and the City reassigned Norman to the Division of Risk Management. In August 2003, Norman applied for the position of Volunteer Coordinator. The City did not grant her an interview and hired Angela Gentry, a black female under age 40, who had an undergraduate degree and was working on completing a master's degree.

Norman contacted the EEOC through its Richmond, Virginia office and completed a discrimination complaint questionnaire provided by the EEOC on June 27, 2002. The EEOC notified the City of a formal charge of discrimination in September 2003. The EEOC issued a right to sue letter in March 2004 and Norman filed this action in June 2004.

## II.

Norman claims that the City did not hire her for the open Compensation and Benefits Analyst positions because of her age. The court finds, however, that Norman has not marshaled facts showing that the City's evidence that it based its decision on the relative qualifications of the candidates was a pretext for unlawful discrimination. Accordingly, the court grants the City's

motion for summary judgment on this claim.

Because Norman offers no direct evidence of discrimination, the court examines Norman's age discrimination claims under the burden-shifting framework of McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). Pursuant to this framework, the plaintiff must first establish a prima facie case of discrimination by showing: (1) that she was a member of the protected class; (2) that there was a specific position for which she applied; (3) that she was qualified for that position; and (4) that the employer rejected her application under circumstances giving rise to an inference of discrimination. See Williams v. Giant Food, Inc., 370 F.3d 423, 430 (4th Cir. 2004). Once the plaintiff has established a prima facie case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment decision. McDonnell-Douglas, 411 U.S. at 802. If the employer satisfies this burden, then the presumption of discrimination established by the prima facie case disappears, and the plaintiff must marshal evidence demonstrating that the employer's proffered reason is merely a pretext for discrimination. Id. at 804.

The court assumes that Norman has established a prima facie case of age discrimination with regard to her job applications in October and November 2001. Norman was fifty-three years old when she applied for the available positions, and the court assumes, without deciding, that she met the minimum qualifications for consideration. The fact that the City hired Stockner and Clewis, who were both significantly younger than Norman, is enough to establish the final element of the prima facie case. See O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 313 (1996) (stating that the fact that a replacement is "substantially younger" than the plaintiff is a "reliable indicator of age discrimination"); see also, Stokes v. Westinghouse

4

Savannah River Co., 206 F.3d 420, (4th Cir. 2000) (modifying the ADEA prima facie case formulation to reflect O'Connor).

However, the City has articulated a legitimate nondiscriminatory reason for its action. It has offered evidence that it hired Clewis and Stockner because the hiring committee found them to be the most qualified candidates. Kenneth Cronin, the City's Director of Human Resources, testified in a deposition that he hired Clewis and Stockner based on the hiring committee's recommendations, and that their superior formal education was a significant factor in his decision. See Mackey v. Shalala, 360 F.3d 463, 468 (4th Cir. 2004) (holding that an employer had successfully articulated a legitimate nondiscriminatory reason where the employer claimed to have hired a candidate based on her superior educational and work history); see also Smith v. Shenandoah Valley Juvenile Detention Home, 2005 U.S. Dist LEXIS 2095 (W.D.Va., February 15, 2005) (holding that choosing an applicant with a college degree over the plaintiff, who did not have a college degree, was a legitimate nondiscriminatory reason).

Norman has not marshaled facts from which a jury reasonably could conclude that the City's explanation for its hiring decisions was pretextual. She offers no evidence contradicting testimony from members of the hiring committee that their decisions were based on Clewis' and Stockner's superior formal education. Norman argues that her practical work experience made her more qualified for the positions. However, her argument misconstrues the court's role and the reach of the ADEA. Under the ADEA an employer is entitled to place a premium on any job-related qualification it chooses, so long as it does not discriminate against a protected individual on account of age. See Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996) (noting that the employer has discretion to choose among qualified

5

candidates, as long as the decision is not based on unlawful criteria); see also Smith v. Flax, 618 F.2d 1072, 1067 (4th Cir. 1980) (noting plaintiff's contention that she was better qualified is not entitled to any weight). Here, the city has offered uncontradicted evidence that its decision makers found Norman to be less qualified, based in large measure on the superior formal education of the selected applicants. Because Norman has failed to marshal facts showing that the City's proffered reason is a pretext for unlawful age discrimination, the court grants the City's motion for summary judgment on Norman's age discrimination claims.

### III.

Norman also claims that the City retaliated against her on three occasions. She claims that the City's June 2001 decision not to reclassify her position, the City's July 2003 decision to transfer Norman to the Division of Risk Management; and the City's August 2003 decision not to hire her for the Volunteer Coordinator position were made as a result of her allegations of discrimination made to the City Council and her EEOC complaint. The court finds, however, that Norman has failed to raise a genuine issue of material fact regarding whether the City took these employment actions because she engaged in protected activity. Accordingly, the Court grants the City's motion for summary judgment on this claim.

To establish a prima facie case of retaliation, Norman must show that: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. King v. Rumsfeld, 328 F.3d 145, 150-51 (4th Cir. 2003). If she has established a prima facie case, then the burden shifts to the City to present evidence of a legitimate non-retaliatory reason for the action. Id. at 151. If the City articulates a legitimate non-retaliatory reason, then Norman must

offer evidence from which a jury could find that the City's proffered reason is pretextual. Id. Norman can prove pretext by showing that the "explanation is 'unworthy of credence' or by offering other forms of circumstantial evidence sufficiently probative of [retaliation]." Mereish v. Walker, 359 F.3d 330, 336 (4th Cir. 2004).

Norman first argues that the City's June 2001 decision not to reclassify her position was in retaliation for her February 2001 speech to the City Council. Protected activity under Title VII includes not only "utilizing formal grievance procedures [but also] staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253, 259 (4th Cir. 1998); see also Bryant v. Aiken Regional Med. Ctrs., 333 F.3d 536, 543-44 (4th Cir. 2003) (noting that Title VII affords employees a broad right to complain to their superiors about suspected discrimination). Viewing the evidence in the light most favorable to Norman, her presentation to the City Council is protected activity. However, Norman has presented no evidence that the decision not to reclassify altered the terms, conditions, or benefits of her employment; she simply remained in the same job, with the same responsibilities, at the same level of pay. Moreover, she has offered no evidence that the City's decision was made because of her protected activity. Merely showing that her employer was aware of her complaint is not enough to establish that the decision was retaliatory. See Hughes v. Bedsole, 48 F.3d 1376, 1387 (4th Cir. 1995). See also, Bartges v. Univ. of North Carolina, 908 F. Supp. 1312, 1329-30 (W.D.N.C. 1995) (finding that plaintiff had failed to produce probative evidence of retaliation where she showed only that employer failed to hire plaintiff after she engaged in protected activity and plaintiff offered only conclusory statements that decision was retaliatory). Under these circumstances, the court cannot find that

Norman has made out a prima facie case of retaliation.

Even if she had established a prima facie case, the City has articulated a legitimate non-retaliatory reason, pointing out that its decision not to reclassify Norman's position was based on previous evaluations from which it concluded that reclassification was inappropriate. Norman has not offered any evidence from which a jury could find that the City's proffered reason was a pretext for unlawful retaliation. She has not offered any evidence contradicting the City Manager's testimony that she based her decision on the previous evaluations, or that the City agreed to reclassify the positions of other similarly-situated employees. The City is therefore entitled to summary judgment on this claim.

Next, Norman argues that the City's decision to transfer her to the Division of Risk Management in July 2003 was retaliatory. Norman's June 2002 EEOC complaint is protected activity under Title VII. Under ordinary circumstances a transfer or reassignment at the same level of pay and benefits is not an adverse employment action, however, Norman claims that her new position did not offer the same opportunity for promotion. See Boone v. Goldin, 178 F.3d 253, 256 (4th Cir. 1999) (noting that loss of the opportunity for promotion may constitute an adverse employment action). Accordingly, drawing all inferences in her favor, she has set forth evidence that she suffered a change in the terms and conditions of her employment. However, Norman has offered no facts demonstrating a causal connection between her protected activity and the transfer. There is no evidence that the decision was motivated by retaliatory animus. In fact, there was a lapse of over twelve months between Norman's EEOC complaint and her transfer and a lapse of eight months between her November 2002 speech to the City Council and her transfer. The extended length of time between the protected activity and the adverse

8

employment action belies Norman's assertion that the decision was motivated by retaliatory intent. See Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001) (noting that to permit an inference of causation, "the temporal proximity must be very close"). The court finds, therefore, that Norman has failed to make out a prima facie case of retaliation.

Even if she had established a prima facie case, however, the City has articulated a legitimate non-retaliatory reason for its decision. Its decision to eliminate Norman's position was the result of citywide budget cuts. The City points out that it eliminated a number of positions and reassigned fifteen employees as a result of these budget cuts. Norman has not offered any evidence from which a jury could conclude that the City's legitimate non-retaliatory reason was merely a pretext for retaliation. She claims that hers was the only position eliminated within her department, but the uncontradicted evidence demonstrates that the City reassigned a number of employees as a result of the budget cuts. Accordingly, summary judgment for the defendant on this claim is appropriate.

Finally, Norman claims that the City's August 2003 decision not to hire her for the position of Volunteer Coordinator was retaliatory. This decision was made more than fourteen months after Norman filed her complaint with the EEOC and nine months after her last speech to the City Council. There is simply no evidence that these events were causally connected in any way, nor is there any other evidence from which a jury could infer that the decision was motivated by retaliatory animus.

Even if Norman had established a prima facie case, the City has articulated a legitimate non-retaliatory reason for its decision not to hire Norman, that is, that it chose to hire a more qualified candidate. Norman has not offered any evidence from which a jury could conclude that

9

this legitimate non-retaliatory reason was merely a pretext for retaliation. Accordingly, the court grants summary judgment in favor of the defendant on this claim.

IV.

For the reasons stated, the court concludes that no genuine issue of material fact exists and that the City is entitled to judgment as a matter of law. Norman has not offered evidence from which a reasonable jury could conclude that the City discriminated against her based on her age or acted with retaliatory intent. Accordingly, the court grants summary judgment in favor of the defendants.

**ENTER**: This 21st day of June, 2005.

_____
UNITED STATES DISTRICT JUDGE

10